# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4613 | **DATE** | 2/4/2004 |
| **CASE TITLE** | Molino vs. Alden Northmoor Rehabilitation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated on the attached memorandum opinion, the Court hereby grants defendants' motion for summary judgment [18-1] and denies the defendants' motion to strike [27-1]. All pending dates and motions are hereby stricken as moot. Terminating case. Enter Memorandum opinion.

(11) ■ [For further detail see order attached to the original minute order.]

JS-6

FEB 0 5 2004 date docketed

31

Docketing to mail notices. ✓

courtroom deputy's initials: MW

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

MARIO MOLINO, )
)
        Plaintiff, )
)
v. ) No. 02 C 4613  **DOCKETED**
) FEB 0 5 2004
ALDEN NORTHMOOR REHABILITATION )
AND HEALTH CARE CENTER, INC., et al., )
)
        Defendants. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Alden-Northmoor Rehabilitation and Health Care Center, Inc.'s and Defendant Alden Management Services, Inc.'s (collectively referred to as "Alden Defendants") motion for summary judgment and motion to strike. For the reasons stated below we grant the motion for summary judgment and deny the motion to strike as moot.

## BACKGROUND

Plaintiff Mario Molino ("Molino") is of Filipino descent. Molino began working at Alden-Northmoor Rehabilitation and Health Care Center ("Alden") as a Personal Care Assistant ("PCA") on April 17, 2000. From July of 2001 until August of 2001 Molino acted as a Staffing Coordinator at Alden, but in August of 2001 Molino returned to a PCA position. According to the Alden Defendants, PCAs at Alden were responsible for changing

1

31

diapers and cleaning nursing home residents, lifting the residents, setting them in bed, and assisting in the dining room. On September 29, 2001 Regina Cervantes ("Cervantes"), who was a licensed practical nurse on duty at Alden, told Molino to change the bedclothes of an incontinent resident. Cervantes claims that Molino did not follow the instruction and that after she again made the request ten to fifteen minutes later, Molino refused and replied: "You can smell him and you can change him." Cervantes filed a disciplinary memorandum form documenting the alleged incident and on October 2, 2001 Jim Palazzo ("Palazzo"), the then acting Administrator of Alden, called Molino into his office to discuss the alleged incident. Palazzo claims that Molino was angry, agitated, and insubordinate to him in his office. After the meeting Palazzo prepared a separation report indicating that Molino left Alden because of insubordination and because he failed to follow the orders of his supervisor. The Alden Defendants contend that Molino resigned from his position. Molino denies that he ever made the above mentioned statement to Cervantes. He admits that he did not change the bed clothing of the resident after being asked twice to do so. However, Molino claims that the resident weighed too much and he needed assistance to lift the resident. Molino denies that he was angry or agitated at his meeting with Palazzo and Molino claims that he was fired by the Alden Defendants and that the separation report falsely states that he resigned. Molino has brought this action claiming that the Alden Defendants discriminated against him because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 ("Section 1981").

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

**DISCUSSION**

I. Title VII Claim

In order to defeat a motion for summary judgment brought by a defendant in regards to a Title VII claim the plaintiff can proceed under the direct or indirect method of proof in order to defeat the motion. *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998). Under the direct approach, the plaintiff can show through direct or circumstantial evidence that the alleged harmful action of the employer was "motivated by an impermissible purpose, such as [his] race or national origin." *Id.* Under the indirect approach the plaintiff must establish a *prima facie* case which will allow an inference of discrimination. *Id.* To establish a *prima facie* case of race discrimination a plaintiff must show: "(1) that [h]e was a member of a protected class; (2) that [h]e was performing h[is] job satisfactorily; (3) that [h]e experienced an adverse employment action; and (4) that similarly situated individuals were treated more favorably." *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002). Molino does not present evidence sufficient to proceed under the direct method of proof and will therefore need to proceed under the indirect method.

If a *prima facie* case is established then there is a rebuttable presumption of discrimination and the employer is required to offer a "legitimate, non-discriminatory reason for the adverse employment action." *Cianci v. Pettibone Corp.*, 152 F.3d 723, 726 (7th Cir. 1998). If the employer provides such a reason, the plaintiff must then show that the reason alleged by the employer is merely a pretext for discrimination. *Id.*

A. Prima Facie Case

Molino has shown that he is a member of a protected class. There is a genuine material dispute regarding whether or not Molino suffered an adverse employment action. According to

4

the Alden Defendants, Molino resigned, but according to Molino's version of events, he was fired. There is also a genuine material dispute concerning whether or not Molino performed his job satisfactorily. The Alden Defendants have supplied evidence indicating that Molino was insubordinate to Cervantes and to Palazzo. However, Molino points to his deposition testimony in which he denies that he was ever disrespectful to Cervantes. Molino claims that he was unable to comply with her request to change the bed clothing because he needed help lifting the resident and claims that he went to get assistance to lift the resident. Molino also portrays himself as a calm and respectful employee during the meeting with Palazzo which is directly contrary to Palazzo's characterization of Molino as being angry, agitated, and insubordinate.

Molino has failed to show that a similarly situated employee outside the protected class was treated more favorably than him. A similarly situated employee is defined as "one who is 'directly comparable to [the plaintiff] in all material respects.'" *Rogers v. City of Chicago*, 320 F.3d 748, 755 (7th Cir. 2003)(quoting *Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002)). Where the plaintiff asserts that he was disciplined more harshly than coworkers, the plaintiff must show that he "is similarly situated with respect to performance, qualifications, and conduct," and "[t]his normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Peele v. Country Mut. Ins.*, 288 F.3d 319, 330 (7th Cir. 2002)(quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000)).

Molino claims that there are twelve similarly situated employees at Alden that were not Filipino and were disciplined in a manner less harsh than himself. Molino claims that the twelve

individuals are named in disciplinary reports produced by the Alden Defendants during discovery. However, many of those reports involve violations of workplace rules other than the rule allegedly violated by Molino which is rule number five for allegedly failing to follow directions and insubordination. Also, the disciplinary reports for the twelve other employees were signed by various supervisors other than Cervantes. In addition, of the employees included in the twelve reports, eleven of the twelve employees were Certified Nursing Assistants whereas Molino was a Personal Care Assistant. The one report issued against another PCA is signed by a supervisor other than Cervantes and accuses the employee of neglect in violation of rule number seven. It is Molino himself that argues vehemently in his response to the Alden Defendant's statement of facts that a Personal Care Assistant is not qualified to perform all of the functions that a Certified Nursing Assistant performs. (RSF 9, 27).

Molino has failed to specifically identify even one similarly situated employee. His vague contention included in his answer brief that there may be a similarly situated employee included in the twelve disciplinary reports is insufficient. As indicated above, clearly at least some of the employees listed in the twelve disciplinary reports are not similarly situated employees. At this stage of the proceedings, Molino, as plaintiff, cannot stand on general allegations. The Alden Defendants have shown that there is an absence of evidence to support Molino's claim and thus he bears the burden of showing that there is some evidence upon which a reasonable jury could base a ruling in his favor. Fed. R. Civ. P. 56(e). Molino, has not met that burden in regards to showing that a similarly situated employee outside the protected class was treated differently.

### B. Pretext Analysis

Even if Molino were able to establish a *prima facie* case, the Alden Defendants have offered a legitimate non-discriminatory reason for Molino's alleged dismissal. The Alden Defendants contend that Molino was disciplined because he failed to follow the orders of Cervantes and he was insubordinate to Cervantes and to Palazzo. The burden then shifts to Molino to show that the given reason is a pretext for discrimination. *Cianci*, 152 F.3d at 726. Molino utterly fails in his endeavor to make such a showing. The main evidence presented by Molino in support of his contention that he was discriminated against because of his race and national origin are several statistics that he has put together from the Alden Defendants' discovery responses. Molino contends that the statistics show that the Alden Defendants discriminated against Filipinos in general. However, "statistical evidence, standing alone, is generally insufficient to prove intentional discrimination." *Bennett v. Roberts*, 295 F.3d 687, 697 (7th Cir. 2002). Also, the supposed statistics presented by Molino are presented in an incomplete, conclusory fashion without any supporting information or explanation.

There is no evidence of racial discrimination or national origin discrimination specifically connected to Molino. Molino contends that when Palazzo found out about Molino's race discrimination claim, he instructed Alden management "to be careful what they said in front of Mario Molino's friend Patricia Yuen." (SAF 4). This in no way supports Molino's contention that they allegedly fired him because of his race or national origin. If Molino was asserting claims against the Alden Defendants, it would be a natural concern of the Alden management that Molino's friend might pass him information and it may be a proper precaution to ensure that nothing is done or stated that might be taken out of context or might in any way be deemed to be

7

inappropriate. Also, regardless of whether or not the comment was proper, it in no way supports a conclusion that at the time of Molino's alleged termination that the Alden Defendants intended to discriminate against Molino because of his race or national origin.

As additional support for his claim of discrimination Molino contends that when Cervantes discovered on September 29, 2001 that the resident had not soiled his bedclothes, that she said to him: "maybe one of your friends stinks." (P Dep. 196). We note that it is interesting that Molino denies telling Cervantes: "you can smell him and you can change him" and also asserts that when Cervantes allegedly learned that the resident did not need changing that Cervantes indicated that it was one of his friends that stinks. Regardless, Molino testified at his deposition that he thought that Cervantes was referring to his Filipino friends. While that may be Molino's belief, a reasonable jury could not conclude the same. Cervantes' reference to Molino's friends in no way implicates his race or national origin. Clearly, if the statement was made by Cervantes it was meant as a personal insult to Molino and his friends of all races and national origins. Molino supports the notion that Cervantes had a personal dislike for Molino. He states in his statement of additional facts that Cervantes "held a grudge against him" because Cervantes has "sexually harassed him in the past . . . ." (SAF 7). Molino also claims, in his additional facts, that after Molino's alleged termination Palazzo stated "good riddance" at the next staff meeting. (SAF 3). Again, if this remark was made at all, it only serves to show that there was personal animosity between Molino and Palazzo. There is absolutely no evidence that would lead a reasonable jury to conclude that the remark was based on Molino's race or national origin. Molino also asserts that after he was allegedly terminated the Administrator of Alden told his "Caucasian step-daughter . . . that she might want to consider getting a job elsewhere and that it must be

uncomfortable for her at Alden Northmoor . . . ." (SAF 8). Even if the Administrator made such a remark out of animosity for Molino, there is no indication that the animosity was based upon Molino's race or national origin. Completely absent in this case is any evidence that would lead a reasonable jury to conclude that the Alden Defendants discriminated against Molino because of his race or national origin or that the given reason for Molino's alleged termination was a pretext. While Molino's version of the facts indicate that Cervantes and Palazzo may have tried to get Molino fired because they did not like him, such evidence would not be sufficient to support a Title VII discrimination claim. To support such a claim Molino must show that he was fired because of his race or national origin, not simply because his employer did not like him. *See Spearman v. Ford Motor Co.*, 231 F.3d 1080, 1086 (7th Cir. 2000)(stating that "sexually explicit insults that arise solely from altercations over work-related issues, while certainly unpleasant, do not violate Title VII"); *Vore v. Indiana Bell Telephone Co., Inc.*, 32 F.3d 1161, 1164 (7th Cir. 1994)(holding that alleged racist co-worker was merely a "lout" who "greatly annoys his coworkers," and stating that "[w]ithout racial animus, there is no Title VII claim."); *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 465 (7th Cir. 1986)(stating that evidence that supervisor "harbored a personal vendetta against" the plaintiff was not relevant for the ADEA claim because "personal animosity" cannot be the basis for an ADEA claim); *Sanders v. General Servs. Admin.*, 707 F.2d 969, 971 (7th Cir. 1983)(affirming district court's involuntary dismissal of Title VII claim because "while there was certainly personal animosity between plaintiff and her immediate supervisor, there was no evidence of sex or race discrimination."); *Pierce-Daniels v. Potter*, 2003 WL 22532821, at *3 (N.D. Ill. 2003)(stating that a plaintiff cannot support a Title VII claim by showing that the employer discriminated against the plaintiff because of a "personal dislike");

9

*Marting v. Crawford & Co.*, 203 F.Supp.2d 958, 967 (N.D. Ill. 2002)(stating that plaintiff had to show that the alleged abuse was motivated by plaintiff's gender "rather than by a personal dislike, grudge, or workplace dispute unrelated to gender."); *Biolchini v. General Electric Co.*, 1998 WL 155930, at * 8 (N.D. Ill 1998)(stating that "federal law does not protect plaintiffs from co-workers' conspiracies to oust supervisors against who they harbor personal animosity or grudges . . .[and that] federal anti-discrimination laws require only that the employer refrain from using age or another protected characteristic in making adverse employment decisions."). Therefore, we grant the Alden Defendants' motion for summary judgment on the Title VII claim.

We note that Molino also asserts in his statement of additional facts that "[d]uring security screenings on July 13th at Alden Northmoor the bags of Filipino employees were searched while the bags of White and Black employees were not." (SAF 11). Molino's only evidentiary support for this factual assertion is a citation to page 61 of his deposition when he made the general comment that all of the Filipino employees had their bags searched. On page 61 of his deposition Molino provides no explanation of how he knows that all the Filipinos' bags were searched. He merely states that he believes that it was so. There is no obvious reason why Molino would be aware of the extent and manner of all the bag searches by the security personnel at Alden and without a proper foundation, such an opinion would not be admissible. The conclusion appears to be nothing more than Molino's speculation and Molino has failed to include an appropriate citation to support paragraph eleven of his statement of additional facts as is required by Local Rule 56.1. Also, even if we were to consider this allegation it would not be sufficient to tip the balance in favor of Molino in the eyes of a reasonable jury.

## II. Section 1981 Claim

Molino also asserts a Section 1981 claim against the Alden Defendants. Section 1981 states that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). The same burden shifting analysis that is applied for a Title VII claim is applied for a Section 1981 claim as well. *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998). As indicated above, Molino cannot show that the Alden Defendants discriminated against him because of his race or national origin. Molino cannot show that similarly situated employees were treated more favorably and cannot show that the Alden Defendants' reason for Molino's alleged termination was a pretext. Therefore, we grant the Alden Defendants' motion for summary judgment for the Section 1981 claim as well.

## III. Motion to Strike

The Alden Defendants have filed a motion to strike the affidavits of Molino, Patricia K. Yuen ("Yuen") and Kristen Toomey ("Toomey"), on the basis that the affidavits contain inadmissible hearsay and that there is a lack of a proper foundation for the assertions in the affidavits.

Yuen includes in her affidavit that she learned that 20-30 Filipinos were no longer employed. However, there is a significant difference between 20 and 30 employees and thus the importance of such an uncertain allegation is questionable. Yuen states that she learned that 20-

11

30 Filipinos were no longer employed, but she makes no reference as to when they were allegedly terminated. Also, Yuen's assertion is of little relevance because of the lack of evidence concerning the racial composition of the Alden Defendants' entire workforce, and the racial composition of all the employees fired during the particular time period. Finally, as stated above, Molino cannot use statistics of other employees as a substitute for any evidence that he was personally discriminated against because of his race or national origin.

We need not address all the arguments presented by the Alden Defendants because the affidavits in question do not contain material evidence. Yuen's affidavit's main point is that Palazzo stated "good riddance" at the staff meeting, which as indicated above, merely indicates a personal dislike for Molino. Molino's affidavit addresses his attempts to become a Certified Nursing Assistant and includes his claims that he was never disrespectful to Cervantes or Palazzo. Toomey's affidavit merely recounts that alleged statement by the Alden Administrator telling her that she could quit if she felt uncomfortable. Other than the mention by Yuen of the Filipinos no longer employed, which as we explained is insufficient to alter the outcome of the dispositive motion, nothing in the affidavits supports Molino's assertion that he was fired because of his race or national origin. Therefore, to the extent that we have not addressed the Alden Defendants' motion to strike, we deny the motion to strike as moot.

## CONCLUSION

Based on the foregoing analysis we grant the Alden Defendants' motion for summary judgment in its entirety. To the extent that we have not addressed the Alden Defendants' motion to strike, we deny the motion to strike as moot.

Samuel Der-Yeghiayah
United States District Court Judge

Dated: February 4, 2004